UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, N.A., | No. 2:19-cv-02099-MCE-AC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| DIANNE METAL, | |
| Defendant. | |

This matter is before the court on plaintiff's motion for default judgment. ECF No. 7. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). The motion was heard on the papers. ECF No. 11. Defendant did not oppose the motion or otherwise appear in this case at any time. For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

**I.     Relevant Background**

Plaintiff, Wells Fargo Bank, N.A., brought this case on October 17, 2019, alleging a single cause of action for breach of contract. Plaintiff plead diversity jurisdiction pursuant to 28 U.S.C. § 1332, asserting that plaintiff is a citizen of North Dakota, defendant is a citizen of California, and the amount in controversy is $85,578.96, which exceeds the statutory threshold. ECF 1 at 2; Rouse v. Wachovia Mortg., FSB, 747 F.3d 707, 709 (9th Cir. 2014) ("a national bank is a citizen

////

1 only of the state in which its main office is located."). Plaintiff brought a single claim for breach
2 of contract, alleging as follows.

3       On March 1, 2018, defendant executed a Consumer Account Application to open a
4 checking account at Wells Fargo bank; the Application is attached to the complaint as Exhibit A.
5 ECF No. 1 at 3.  The Application provided that the account was governed by the "Account
6 Agreement," which is attached to the complaint as Exhibit B.  Id.  Page 28 of the Account
7 Agreement provides that if an account holder incurs an overdraft, the account holder must make a
8 deposit or transfer to promptly return the account to a positive balance, and if the account holder
9 fails to do so, the Account Agreement permits Wells Fargo to close the account and initiate
10 collection efforts.  Id.  The Account Agreement provides for the recovery of attorneys' fees and
11 costs for any such efforts.  Id.

12       On May 16, 2019, defendant deposited into the Account a check identified with number
13 3570411 in the amount of $90,000 (the "First Check").  ECF No. 1 at 3.  On May 20, 2019,
14 defendant deposited into the Account a check identified with number 3570422 in the amount of
15 $90,000 (the "Second Check").  Id.  On May 20, 2019, defendant deposited into the Account a
16 check identified with number 298724 in the amount of $91,555.52 (the "Third Check").  Id.  Over
17 the next several days, defendant withdrew, transferred, or otherwise dissipated substantial funds
18 derived from the Three Checks,[1] including a withdrawal of $90,000.  Id.  Between May 20, 2019,
19 and May 22, 2019, each of the Three Checks was returned unpaid by the issuing bank and Wells
20 Fargo reversed the deposits into the Account pursuant to the terms of the Account Agreement,
21 leaving defendant with a net overdraft of $85,578.96.  Id. at 3-4.

22       Defendant has failed or refused to pay the amount due and owing.  Id. at 4.  All conditions
23 precedent to this action have occurred or have been performed, or have otherwise been waived or
24 excused.  Id.  Wells Fargo has performed all obligations required of it under the Account
25 Agreement, except any such obligations that were waived or excused.  Id.  Plaintiff now seeks
26 liquidated damages for breach of contract in the amount of the amount of $85,578.96, plus

27
28   [1] The First Check, Second Check, and the Third Check are collectively referred to as the "Three Checks."

2

interest, costs, and expenses, no part of which has been paid. Id. Further, pursuant to page 28 of the Account Agreement, plaintiff seeks to recover its attorneys' fees and expenses incurred in collecting the overdraft in the Account. Because the damages are liquidated, Wells Fargo contends it is entitled to prejudgment interest from the date of the breach. Id.

Defendant has not appeared in this case in any capacity since it was filed. A summons for defendant was returned executed on December 5, 2019. ECF No. 4. Plaintiff moved for entry of default on December 18, 2019. ECF No. 5. The Clerk of Court entered default against defendant on December 19, 2019. ECF No. 6. Plaintiff moved for default judgment on March 9, 2020. ECF No. 7. Plaintiff stated in its motion that it would serve defendant by mail with a copy of the motion and supporting documents. Id. at 4. Defendant did not file any response and the matter was submitted on the papers. ECF No. 11.

## II.    Motion

Plaintiff moves for default judgment on its single claim of breach of contract, seeking liquidated damages in the amount of $85,578.96, plus $6,846.32 in prejudgment interest, $5,875.20 in attorneys' fees, and $574.10 in costs. ECF No. 7 at 10. Defendant has not appeared or filed any response.

## III.    Analysis

A. Legal Standard

Pursuant to Fed. R. Civ. P. 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924–25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

////

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. Application of the Eitel Factors

 1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for

4

1 recovery. Accordingly, the first <u>Eitel</u> factor favors the entry of default judgment.

          2. <u>Factors Two and Three: Merits of Claims and Sufficiency of Complaint</u>

   The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

   Plaintiff brings a single cause of action for breach of contract. ECF No. 1 at 3. The contract at issue, the Account Agreement, contains a choice of laws provision, providing that "the laws governing your account include . . . Laws of the state where you opened your account (without regard to conflict of laws principles)." See Glaser Decl., Ex. B at 9. Here, the account was opened in California, and accordingly, California law applies. See Glaser Decl., Ex. A. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1388 (Cal. Ct. App. 1990), <u>as modified on denial of reh'g</u> (Oct. 31, 2001), <u>as modified on denial of reh'g</u> (Oct. 31, 2001). "[T]here is no contract until there has been a meeting of the minds on all material points." <u>Am. Employers Grp., Inc. v. Employment Dev. Dep't</u>, 154 Cal. App. 4th 836, 846–47 (2007) (quotations and internal citations omitted). "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract." <u>Weddington Prods., Inc. v. Flick</u>, 60 Cal. App. 4th 793, 811 (1998).

   Upon executing the Business Account Application and opening her account, defendant was informed by the terms on the Consumer Account Application, which she signed, that the Account is governed by the Account Agreement. Glaser Decl. ¶ 4 and Ex. A (Account Agreement attached at Ex. B). Defendant's signature indicates that she received the Account Agreement and agreed to be bound by its terms. <u>Id.</u> Thus, plaintiff has demonstrated the existence of a valid contract. Plaintiff also alleges that it "has performed all obligations required

5

of it under the Account Agreement, except any such obligations that were waived or excused." ECF No. 1 at 4.

Plaintiff has also successfully alleged breach. At page 21, the Account Agreement states: "You agree to promptly repay any overdrafts resulting from [a] reversed payment." Glaser Decl. Ex. B at 25. The Account Agreement also provides that in the event of an overdraft, the account holder must make a deposit or transfer to promptly return the account to a positive balance. Id. at 32. Plaintiff alleges specific facts establishing that defendant's reversed deposits and withdrawals resulted in an overdraft, which plaintiff did not repay. ECF No. 1 at 3-4. As a result of defendant's breach, plaintiff alleges it incurred damages in the amount of the overdraft, plus interest, attorneys' fees, and expenses. ECF No. 1 at 4-5. Thus, plaintiff has satisfied all of the elements of a California breach of contract claim.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Here, plaintiff seeks liquidated damages in the amount that defendant over-drafted her account, plus interest, attorneys' fees, and costs. The amount at issue is proportionate to the seriousness of defendant's conduct and is contemplated by the contract at issue. Thus, this factor favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003); PepsiCo, Inc., 238 F. Supp. 2d at 1177.

////

          5.    Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff served the defendant with the summons and complaint. ECF No. 4. Moreover, plaintiff stated it would defendant by mail with the motion for default judgment and supporting documents. ECF No. 7 at 4. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to defend herself in this action. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

          6.    Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

          7.    Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the amount of damages to which plaintiff is entitled.

  C.  Terms of Judgment

Plaintiff submitted a signed declaration stating that the overdraft amount at issue is $85,578.96, comprised of the amount due and owing per refunded checks deposited to the Account. Glaser Decl. ¶ 9. These are plaintiff's actual damages incurred by the contract breach. Further, pre-judgment interest may be included as part of a defendant's indebtedness claimed by a plaintiff. See In re Ryan, 369 B.R. 536, 548–49 (N.D. Cal. 2007), aff'd, 310 F. App'x 980 (9th Cir. 2009) (proper to include pre-judgment and post-judgment interest in calculation of total

indebtedness to plaintiff). Plaintiff is entitled to recover pre-judgment interest on any liquidated contract claim from the date the claim arose. Cal. Civ. Code § 3287; see Chesapeake Indus., Inc. v. Togova Enterprises, Inc., 149 Cal. App. 3d 901, 907 (Cal. Ct. App. 1983). The statutory interest rate is ten percent (10%) per year. Cal. Civ. Code § 3289. Interest began accruing has accrued at the time the money became due and owing (May 22, 2019), and as of the final drafting of this order, 358 days since the debt was owed, pre-judgment interest stands at $8,393.77 ((($85,578.96 x .10) / 365) x 358 = $8,393.77).

"Under the American Rule, the prevailing litigant is ordinarily not entitled to collect reasonable attorney's fees from the loser[;] [t]his default rule can, of course, be overcome by . . .[statute or] an enforceable contract allocating attorneys' fees." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 448 (2007) (internal citations omitted). State law governs the interpretation and application agreements as to the award of attorney's fees. Resolution Tr. Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d 785 (9th Cir. 1993). As discussed above, the plaintiff has properly presented the existence of an enforceable contract under California law.

Pursuant to the Account Agreement, plaintiff is entitled to attorneys' fees and expenses incurred in collecting any overdraft in the Accounts. See Glaser Decl., Ex. B at 28. Attorney Jack Praetzellis submitted an affidavit that he and attorney Eric Bevin were the sole practitioners representing plaintiff in this case. Praetzellis Decl. at 3. Praetzellis charged a discounted rate of $289 per hour for the months August 2019 through December 2019 and $288 per hour for January 1, 2020 forward. Id. Bevin charged a discounted hourly rate for this matter of $289 per hour for the months August 2019 through December 2019 and $285 per hour for January 1, 2020 forward. Id. They billed plaintiff $5,875.20 for services in connection with this action, and submitted an affidavit of hours billed. Id. In light of the complexity of this case, the court finds the fees reasonable. Plaintiff also seeks reimbursement of $574.10 in costs for filings ($400) and service of process ($174.10). Id. at 4. The court finds these costs appropriate.

### IV.   Conclusion

For the reasons set forth above, it is hereby RECOMMENDED THAT:

1. Plaintiff's March 9, 2020 motion for default judgment, (ECF No. 7) be granted;

  2. The court enter judgment against the defendant as to the sole claim of breach of contract, with liquidated damages in the amount of $85,578.96 and $8,393.77 in prejudgment interest;

  3. That plaintiff be awarded $5,875.20 in attorneys' fees and $574.10 in costs; and

  4. That this his case be closed.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998), as amended on denial of reh'g (Nov. 24, 1998); Martinez v. Ylst, 951 F.2d 1153, 1156–57 (9th Cir. 1991).

DATED: May 14, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE